**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Anit K. Jindal, OSB #171086**
AnitJindal@MarkowitzHerbold.com
**Allison L. Rothgeb, OSB #222086**
AllisonRothgeb@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
*Attorneys for Plaintiffs City of Albany and City of Millersburg*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CITY OF ALBANY, an Oregon municipal corporation, and CITY OF MILLERSBURG, an Oregon municipal corporation,

Plaintiffs,

v.

UNITED STATES OF AMERICA, and UNITED STATES ARMY CORPS OF ENGINEERS, an agency of the United States government,

Defendant.

Case No.

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURES ACT, CLEAN WATER ACT, NEGLIGENCE, NEGLIGENCE *PER SE*, NUISANCE, AND MONETARY DAMAGES**

Plaintiffs, the City of Albany and City of Millersburg, for their complaint against defendant United States, by and through acts and omissions of its agency the United States Army Corps of Engineers, allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, City of Albany ("Albany"), is a municipal corporation organized and existing under the laws of the State of Oregon and has standing to be a party to this lawsuit.

2. Plaintiff, City of Millersburg ("Millersburg"), is a municipal corporation organized and existing under the laws of the State of Oregon and has standing to be a party to this lawsuit.

3. Defendant United States of America ("United States") is sued pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. Defendant United States Army Corps of Engineers ("the Corps") is an agency within the Department of the Army, United States Department of Defense, and is sued for non-monetary relief under the Administrative Procedure Act. The United States, through the Corps, is tasked with, *inter alia*, managing water resources in the Willamette Valley Basin. The Corps owns, operates, and maintains the Willamette Valley Project ("WVP"), a system of 13 dams along the Willamette River, and maintains an office in Portland, Oregon that serves as the headquarters of the Portland District, which is responsible for operating the dams that comprise the WVP. All acts, omissions, and claims referencing the Corps herein constitute acts, omissions, and claims against the United States.

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action presents a federal question under the Clean Water Act, 33 U.S.C. § 1251 et seq. and the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Jurisdiction over plaintiffs' tort claims is proper pursuant to 28 U.S.C. § 1346(b)(1). Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. The Clean Water Act requires federal agencies to comply with state water quality standards, 33 U.S.C. § 1323(a), and plaintiffs seek review of agency action alleged to be contrary to those statutory obligations.

5. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for all other claims that form part of the same case or controversy, including claims arising under Oregon law.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district and a substantial part of the property that is the subject of the action is situated herein. Venue is proper in the Portland Division of this district because operation of the dams in the Willamette Valley Basin is directed from the Corps' Portland District, headquartered in Portland, Oregon.

7. By letters dated October 30, 2025, plaintiffs satisfied the notice provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2674, 2675, such that plaintiffs may bring this action upon final agency disposition of their claims.

## GENERAL ALLEGATIONS

8. The South Santiam River is located in the Upper Basin of the Willamette River,[1] in an area east of the Willamette River and between Salem (to the north) and Eugene (to the south). The Corps operates two dams on this waterway, Green Peter and Foster, the construction of which were completed in 1967 and 1968, respectively.

9. Before the South Santiam River reaches its confluence with the Willamette River, it flows into the Green Peter Reservoir, a reservoir created by Green Peter Dam. This reservoir is authorized to serve several purposes, including providing water supply.

[1] Because the Willamette River flows South to North, the Upper Basin is below Willamette Falls whereas the Lower Basin is above it.

10. Through operation of Green Peter Dam, water is released back into the South Santiam River where it continues to flow until it reaches Foster Reservoir, a reservoir created by Foster Dam. This reservoir is authorized for the same purposes as Green Peter Reservoir.

11. Through operation of Foster Dam, water is released back into the South Santiam River where it continues on its path toward the Willamette River.

**(The South Santiam River supplies water to Albany and Millersburg)**

12. Albany is located approximately 30 miles from Green Peter Dam and 26 miles from Foster Dam. Millersburg directly borders Albany to the north. The South Santiam River is the primary source of both Albany's and Millersburg's municipal water supplies. The water treatment facility that serves both Albany and Millersburg is located on the South Santiam River, with its water treatment facility just downstream from the confluence of the North and South Santiam Rivers.

**(Albany and Millersburg's water treatment facility is not designed for highly turbid water)**

13. To provide a safe municipal water supply, including drinking water, Albany and Millersburg treat water supplied by the South Santiam River at their water treatment facility. The Cities' raw water pump station pumps water from the South Santiam River to the water treatment plant. The water is next pumped through membrane filter cells.

14. The water supplied by the South Santiam River has historically been of high quality with low turbidity levels. The Cities' designed the water treatment facility to treat water with these characteristics. Because of the low turbidity typical of the South Santiam River, the water treatment facility was not designed to accommodate a high sediment load resulting from a highly turbid water source.

15. When the water supply from the South Santiam River has excess sediment, as defendant caused and will continue to cause per the allegations herein, the treatment system can malfunction, stop working completely, and/or have a reduction in its useful life.

**(Oregon's water quality standards are governed by federal and state law)**

19. To comply with the Clean Water Act ("CWA"), each state must develop and implement water quality standards that protect and enhance the quality of water within the state. Federal agencies are, in turn, required to comply with these legal standards. As such, the CWA requires that the United States, through the Corps comply with the water quality standards established by Oregon law.

20. Oregon's water quality standards are expressed in a variety of ways: as the designated beneficial uses of a given waterway; as numeric criteria that may vary based on location; as narrative criteria that apply statewide; and in the generally applicable antidegradation standard.

21. Under Oregon law, a designated beneficial use is the purpose or benefit to be derived from a body of water as designated by the appropriate state agency. A given waterway will have multiple designated beneficial uses. The Willamette Basin, including the South Santiam River, is designated for the following beneficial uses: as a public, private, and industrial water supply, and to support fish and aquatic life.

22. The numeric criteria that regulate water quality are set forth in the Oregon Administrative Regulations ("OAR"). With respect to turbidity, the standard is uniform throughout the state. Oregon law allows turbidity levels of no more than 10 percent above the baseline turbidity level found "upstream of the turbidity causing activity." OAR 340-041-0036. This standard may be exceeded in limited cases, *e.g.*, in an emergency or to perform other

essential activities, but only with proper approval and "provided all practicable turbidity control techniques have been applied[.]" *Id.*

23. Oregon's "Statewide Narrative Criteria" for water quality provides that "deleterious factors," including turbidity, must be maintained at their lowest possible levels regardless of the specific water quality standards established by regulation. OAR 340-041-0007(1). The narrative criteria also encourage coordination between federal, state, and local agencies to protect water quality, including by controlling turbidity, through efforts to regulate water flow. OAR 340-041-0008. In addition, the narrative criteria prohibit "[a]esthetic conditions offensive to the human senses of sight, taste, smell, or touch . . . ." OAR 340-041-0013.

24. In addition to its more specific water quality standards, Oregon's antidegradation policy requires governing bodies "to prevent unnecessary further degradation" and "ensure the full protection of all existing beneficial uses." OAR 340-041-0004(1).

**(The Corps failed to operate the Willamette Valley Project dams consistent with regulatory requirements)**

25. The 13 dams of the Upper and Lower Willamette River comprise the WVP.

26. The Corps is responsible to maintain and operate the WVP in compliance with all applicable laws and regulations. This includes the requirements of the CWA as well as the state water quality standards made applicable to federal agencies via the CWA.

27. Under the Endangered Species Act ("ESA"), the Corps must protect threatened species that reside in the waterways of the WVP. In 1999, the EPA listed two such species of fish as threatened under the ESA (the "threatened species"). In 2008, the National Marine

Fisheries Service ("NMFS") issued a Biological Opinion ("the 2008 BiOp") regarding the WVP's impact on the threatened species.

28. In the 2008 BiOp, the NMFS identified two primary obstacles for the threatened species: (1) blocked passage through WVP dams, and (2) inadequate water quality in the Willamette Basin. To remedy these issues, the NMFS prescribed a series of Reasonable and Prudent Alternatives ("RPAs") that the Corps was expected to implement.

29. The Corps did not implement the RPAs identified in the 2008 BiOp. Defendant's failure had several negative repercussions, including harm to the threatened species, extensive litigation, and fallout from the actions necessary to remediate the Corps' failure to act, including harm to its beneficial use in providing water supply for public, private, and industrial use.

30. In 2018, after a decade of inaction, environmental groups sued the Corps for violating the ESA.[2] In particular, they alleged that the Corps failed to implement the RPAs identified in the 2008 BiOp, harming the threatened species. The Court agreed, ruling in 2020 that the Corps violated the ESA by failing to implement the RPAs, causing ongoing harm to the threatened species.[3]

31. In 2021, the Court ordered the Corps to implement the 2008 RPAs. The Court further ordered that the Corps comply with the various water quality standards.[4] The Court was

---

[2] This action is *Nw. Env't Def. Ctr., et al. v. United States Army Corps of Eng'rs, et al.*, 3:18-cv-00437-HZ.

[3] *Nw. Env't Def. Ctr. v. United States Army Corps of Eng'rs*, 479 F. Supp. 3d 1003, 1016 (D. Or. 2020).

[4] *Nw. Env't Def. Ctr. v. United States Army Corps of Eng'rs*, 558 F. Supp. 3d 1056, 1076-79 (D. Or. 2021), *amended*, No. 3:18-CV-00437-HZ, 2021 WL 12319692 (D. Or. Sept. 21, 2021).

explicit that the Corps must not violate the CWA and state water quality standards.[5] The Corps did so anyway.

32. To effect the 2008 RPAs, the Court required the Corps to implement plans developed by an Expert Panel convened by and subject to oversight by the Court. *Id.* at 1076-79, n.1. Again, the Court was explicit that the Corps must not violate "the various water quality standards governing the WVP." *Id.* at 1077. The Corps did so anyway.

33. Pursuant to the court-ordered, non-discretionary plan, the Corps was required to draw down the level of Green Peter Reservoir in November and December 2023.

34. The Corps was aware that the drawdown planned for November 2023 would cause elevated turbidity levels in the affected waterways. In fact, the Corps knew that its action would violate Oregon water quality laws and, in turn, the Court's order.

**(The 2023 drawdown resulted in highly turbid water, violating water quality standards and causing plaintiffs significant harm)**

35. As the Corps expected, the 2023 drawdown caused massively elevated turbidity levels in the South Santiam River, damaging Albany's and Millersburg's municipal water supplies and treatment facility, and threatening their ability to supply safe water. During the drawdowns, the turbidity levels were exponentially higher than normal and well beyond the levels allowed under Oregon's water quality standards.

36. During the 2023 drawdown of Green Peter Reservoir, for example, turbidity levels of the raw water intake at the Cities' water treatment facility were far in excess of normal levels. Between October 2023 and January 2024, raw turbidity levels exceeded 50 NTUs for

---

[5] *Id.* at 1075 (citation omitted) (observing that "a court may not command an agency to violate its other statutory obligations.").

forty one days. By contrast, during the same period in the two preceding years (2021 and 2022), turbidity levels raw turbidity levels exceeded 50 NTUs for just six days each year.

37. This increased turbidity was caused by the Corp's unreasonable and negligent conduct in operating the WVP. The Corps failed to adequately study turbidity when planning its drawdowns, and the Corps failed to take reasonable steps to mitigate turbidity during the drawdowns. The Corps' unreasonable conduct includes, but is not limited to, allowing water to flow at high velocities during the drawdowns such that the water stirred up sediment, thereby increasing turbidity. The Corps took these actions even though state water quality standards, as incorporated in federal law and a federal injunction, all required the Corps to mitigate turbidity when operating the WVP.

**(Increased turbidity damaged the Cities' water treatment facility)**

39. The increase in turbidity and sediment load caused damage to the Cities' water treatment facility in 2023 and 2024, and will continue to do so. The Corps' negligent implementation of the drawdowns has and continues to create extreme sediment load, causing membrane filter cells to experience significant fouling, which will continue to do so year over year. This required multiple clean-in-place cycles to maintain appropriate pressure levels; increased backwash cycles and more backwash waste sent to the backwash settling basins; and increased chemical dosage rates, all of which contributed to increased operation and maintenance costs during the drawdown events, which will continue. In addition, the duration of the increased sediment load voided the warranties of the membrane filters.

40. As a result of the 2023 and 2024 drawdowns, the Cities incurred significant expenses in order to provide safe drinking water to its residents. These included operating supplies, such as water treatment chemicals, and professional services.

41. To address the impact of the 2023 and 2024 drawdowns, and to address the Corps' threatened actions hereafter, the Cities will need to significantly modify their water treatment facility to ensure the safety of their municipal water supplies.

**FIRST CLAIM FOR RELIEF**
**(Administrative Procedures Act – Against the Corps)**

46. Plaintiffs incorporate by reference all allegations set forth herein.

47. Under 5 U.S.C. § 702, persons suffering legal wrongdoing because of agency action are entitled to judicial review.

48. The Corps' decision to carry out court-ordered drawdowns in a manner that violates Oregon water quality standards constitutes final agency action within the meaning of 5 U.S.C. § 702.

49. The CWA requires federal agencies to comply with state water quality standards. 33 U.S.C. § 1323.

50. The drawdowns described in this Complaint violated Oregon's numeric turbidity criteria, narrative criteria, antidegradation policy, and designated beneficial protections.

51. Agency action taken in violation of the CWA and binding state water quality standards is not in accordance with the law and is arbitrary and capricious under 5 U.S.C. § 706(2).

52. Plaintiffs are entitled to a declaration that the drawdowns violated the CWA and Oregon water quality standards.

53. Plaintiffs are further entitled to prospective relief prohibiting future drawdowns that violate applicable water quality standards.

54. An actual and justiciable controversy exists regarding whether the Corps' drawdowns violate the CWA and whether future annual drawdowns may lawfully proceed in the same manner.

55. Plaintiffs are entitled under 28 U.S.C. § 2201 to a declaration that: (a) the 2023 and 2024 drawdowns violated the CWA; (b) the drawdowns violated Oregon's numeric turbidity standard; (c) the drawdowns violated Oregon's narrative criteria and antidegradation policy; and (d) future drawdowns conducted in the same manner would violate the CWA.

**SECOND CLAIM FOR RELIEF**
**(Negligence *Per Se* – Against the United States)**

56. Plaintiffs incorporate by reference all allegations set forth herein.

57. This claim is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2674. Plaintiffs allege that defendant's conduct constituted negligence under Oregon law, and that applicable statutes and regulations establish the standard of care relevant to that claim.

58. The CWA requires federal agencies to comply with state water quality standards.

59. The Corps, in drawing down Green Peter Reservoir in 2023 and 2024, failed to comply with Oregon's water quality standards, violating the Court's order and the CWA.

60. These violations injured plaintiffs and impaired their ability to provide a safe municipal water supply. Plaintiffs are of the class of persons that the CWA and Oregon's water quality standards are intended to protect.

61. The Corps' violations of the CWA and Oregon's water quality standards caused the type of harms that those laws are intended to prevent. Oregon water quality standards are

intended to protect downstream water users and public drinking water supplies, including plaintiffs, from the type of harm alleged in this Complaint.

62. The Corps' conduct, as alleged and incorporated herein by reference, constitutes negligence per se.

63. As a direct and proximate result of the negligence per se of the Corps, plaintiffs have suffered property damages and other losses and are entitled to recover those damages as set forth herein.

**THIRD CLAIM**
**(Negligence – Against the United States)**

64. Plaintiffs incorporate by reference all allegations set forth herein.

65. This claim is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), which waives sovereign immunity for certain tort claims against the United States, and 28 U.S.C. § 2674, which provides that the United States shall be liable in the same manner and to the same extent as a private individual under like circumstances.

66. The Corps owed plaintiffs a duty under Oregon law to exercise reasonable care in the operation and management of the Willamette Valley Project as to avoid causing foreseeable harm to downstream property and municipal infrastructure.

67. The Corps knew or should have known that, if it performed its duties negligently, it was foreseeable that plaintiffs, as municipalities who are duty-bound to provide safe drinking water to their communities, would be harmed.

68. The Corps breached its duty of care to plaintiffs by the conduct set forth herein. As a direct, proximate, and foreseeable result of the Corps' negligence, plaintiffs have suffered losses and property damage and are entitled to recover those damages as set forth herein.

**FOURTH CLAIM**
**(Private and Public Nuisance – Against the United States)**

69. Plaintiffs incorporate by reference all allegations set forth herein.

70. This claim is likewise brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2674.

71. The Corps, through operation of the Willamette Valley Project, created and maintained conditions that caused extreme and unlawful turbidity in the South Santiam River.

72. The excessive turbidity unreasonably interfered with plaintiffs' property interests in their water treatment facilities and infrastructure.

73. The excessive turbidity unreasonably interfered with the public's right to clean and usable drinking water from the South Santiam River.

74. The interference was substantial, unreasonable, and ongoing.

75. As a direct and proximate result, plaintiffs have suffered damages as described herein and will continue to suffer damages absent judicial intervention.

76. Plaintiffs are entitled to damages and, to the extent permitted by law, injunctive relief abating the nuisance for the public and private nuisance created by the Corps.

**DAMAGES**
**(All Claims)**

77. The damages sustained by plaintiffs include, in addition to those categories set forth herein in an amount to be proven at trial, the cost of additional operating supplies ($13,089), equipment and monitoring ($28,525), and services ($6,775) for the 2023 and 2024 drawdowns.

78. To address extreme turbidity caused by future drawdowns, plaintiffs will be required to improve their water treatment plant by installing a pretreatment facility (to include a

basin for flocculation and sedimentation, plate settlers, and a sludge collector cable-vac system), elevated chemical dosing using a static mixer, and installation of a third backwash settling basin. This and other improvements are estimated to cost $31,167,500.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request the entry of judgment against the Corps and the United States and that the following relief be granted:

A. Award plaintiffs compensatory damages against the United States pursuant to 28 U.S.C. §§ 1346(b)(1) and 2674, in amounts to be proven at trial;

B. Declare that the drawdowns violated the CWA and Oregon water quality standards;

C. Enjoin future drawdowns to the extent they will violate applicable water quality standards;

D. Award interest as to each plaintiff to the extent allowed by law;

E. Award attorney fees and costs to each plaintiff pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

F. Award discretionary costs; and

G. Such further relief as the Court deems just and proper to provide relief to plaintiffs and to protect the public interest.

DATED: May 8, 2026.

MARKOWITZ HERBOLD PC

*s/ Anit K. Jindal*
Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
Allison L. Rothgeb, OSB #222086
AllisonRothgeb@MarkowitzHerbold.com

*Attorneys for Plaintiffs City of Albany and City of Millersburg*